**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

```
FILED
AUG 1 1 2021
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
```

In re:                              ) Case No. 09-28900-C-7
                                    )
JESTINA PICKETT,                    )
                                    )
                    Debtor.         )
_____)

**OPINION REGARDING UNCLAIMED FUNDS
UNDER 28 U.S.C. § 2042**

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

This unclaimed money situation is part of the hangover from the real estate bubble that burst into the Great Recession.

The chapter 7 trustee sold the debtor's over-encumbered real estate because no deed of trust was recorded, leaving the mortgagee with an unsecured claim. The trustee distributed $228,288.47 as the mortgagee's pro rata share but the check was not cashed. The funds are now on deposit in the Treasury.

The debtor and the mortgagee's servicer have filed competing petitions for payment of the unclaimed funds from the Treasury pursuant to 28 U.S.C. § 2042, which requires "full proof" of being the "rightful owner" who is "entitled" to the funds.

The debtor's petition poses the question whether a debtor can be a "rightful owner" and "entitled to" money distributed to a creditor under 11 U.S.C. § 726(a)(2) on account of an allowed claim solely because the creditor did not cash the trustee's distribution check. The answer is: no.

As to the servicer, has it provided "full proof" it is "entitled" to the funds? The answer is: not yet.

## Facts

In May 2005, Jestina Pickett executed an Adjustable Rate Note promising to pay GreenPoint Mortgage Funding, Inc., $536,000 over 40 years, to be secured by a deed of trust on 424 East Heritage Drive, Mountain House, California. Proceeds were used by GreenPoint to pay itself $467,000 and release the deed of trust on a prior GreenPoint loan.

The note was endorsed to the order of Wells Fargo Bank, N.A. as Trustee for Structured Asset Mortgage Investments II Inc., GreenPoint Mortgage Funding Trust 2005-AR4, Mortgage Pass-Through Certificates, Series 2005-AR4.

JP Morgan Chase Bank-EMC, doing business under the name EMC Mortgage Corporation became the loan servicer.[1]

The title company handling the transaction released the former deed of trust but neglected to record a new deed of trust.

Ms. Pickett filed a chapter 7 case May 5, 2009, scheduling 424 East Heritage as worth $320,000, subject to $671,000 in mortgage debt. She did not reside there. None of her prior residences dating back to January 2006 were at 434 East Heritage.

She claimed 424 East Heritage as exempt under the 2009 version of California Code of Civil Procedure § 703.140(b)(1) in the amount of zero. And, she claimed only $1,950 of the $18,350 she could have exempted "in any property" under § 703.140(b)(5),[2]

---

[1]For clarity in the face of the prestidigitation in the structured finance industry, JP Morgan Chase-EMC is referred to in this opinion by the misnomer "mortgagee." Formally, it is the servicer and Specialized Loan Servicing LLC is subservicer.

[2]California opted out of the § 522(d) federal exemptions but cloned them by enacting Cal. Code Civ. P. § 703.140(b). In re Petruzzelli, 139 B.R. 241, 244 (Bankr. E.D. Cal. 1992).

leaving $16,400 in exemptions "in any property" unclaimed.

In her Statement of Intention, she said she planned to retain 424 East Heritage and "reaffirm at market value," but the mortgagee did not agree to reaffirm.

Discharge was entered, and the case was closed August 14, 2009, as a routine no-asset case.

The case was reopened in 2012 when it was discovered that no deed of trust was recorded.[3] The chapter 7 trustee marketed and sold the property free and clear of liens for $292,000.[4]

Although the debtor could have amended her claim of exemptions in the reopened case to include the extra $16,400 "in any property" available under state law, she did not do so.

JP Morgan Chase-EMC, the loan servicer, filed a timely proof of claim for $671,000. There was no objection to the claim, which was allowed and paid to the extent permissible.

The chapter 7 trustee ultimately distributed 34 percent pro rata on allowed unsecured claims under § 726(a)(2), leaving $459,472.22 in claims discharged without payment.

The trustee's check to JP Morgan Chase-EMC for $228,288.47 was not cashed.[5] As required by 11 U.S.C. § 347(a), the trustee

_____

[3]The reopening motion papers include a declaration from the chapter 7 trustee describing the circumstances. Motion of United States Trustee to Reopen Case. Dkts. #23 & 24 (March 21, 2011).

[4]The trustee describes tussle with the mortgagee for control of the property in his Narrative Supplement to Trustee's Final Account. There apparently was much jawboning, some activity in state court, including a lis pendens filed by the mortgagee, but no adversary proceeding. Dkt. #61 (Feb. 3, 2012).

[5]The trustee notes his understanding that the mortgagee was concerned that it not "jeopardize insurance claim recovery." Trustee's Narrative. Dkt. #61, at 3 (Feb. 3 2012)

1  stopped payment and paid that amount into court on June 19, 2012.

2      The Clerk of Court, pursuant to 28 U.S.C. § 2041, deposited

3  $228,288.47 with the Treasurer of the United States "in the name

4  and to the credit" of the court.

5      After five years, in accordance with 28 U.S.C. § 2042, the

6  Clerk of Court deposited that sum in the Treasury "in the name

7  and to the credit of the United States," where it now reposes.

8      Brighton Capital Corporation, an unclaimed funds finder,

9  contracted with the debtor in 2019 to assist her in obtaining the

10  funds in exchange for $43,374.80.

11      Upon reviewing the petition presented by Brighton, this

12  court ordered that there be a hearing on notice to the United

13  States attorney with a view to "full proof" that the debtor is

14  "entitled" to the funds. This court also ordered that notice be

15  directed to the agent for service of process of JP Morgan Chase.

16      Specialized Loan Servicing LLC emerged to file an opposition

17  to the debtor's petition, asserting it is the authorized servicer

18  of the loan, and countered with a request that the $228,288.47 be

19  paid to it for the benefit of the loan's beneficiary.

20      The United States attorney did not take a position.

21      Faced with competing petitions, this court issued a

22  scheduling order, fixed a discovery deadline in the contested

23  matter, and proceeded toward an evidentiary hearing.

24

25                  <u>Jurisdiction</u>

26      Jurisdiction is founded on 28 U.S.C. §§ 1334(a) & (e)(1).

27  This is a core proceeding a bankruptcy judge may hear and

28  determine. 28 U.S.C. § 157(b)(2)(A).

1    This court retains exclusive jurisdiction over bankruptcy
2  case funds deposited in the Treasury as a custodial escheat
3  pursuant to 28 U.S.C. § 2042 that are held "in the name and for
4  the credit of the United States" subject to the requirement of a
5  court order for payment. The funds in a status of custodial
6  escheat have not been abandoned pursuant to 11 U.S.C. § 554 and
7  retain their character as property of the estate subject to
8  exclusive bankruptcy jurisdiction. 28 U.S.C. § 1334(e)(1).

10                              Discussion

11    It is undisputed that the $671,000 allowed claim was valid,
12  that claims required to be paid under § 726(a)(2) were not paid
13  in full, and that no funds were abandoned.

15                                  I

16              Statutes Applicable to Unclaimed Funds

17    Bankruptcy Code § 347(a) requires that 90 days after a final
18  distribution under §§ 726, 1194, 1226, or 1326, the trustee shall
19  stop payment on any check remaining unpaid and any remaining
20  property of the estate shall be paid into the court and disposed
21  of under chapter 129 of title 28. 11 U.S.C. § 347(a).

22    Chapter 129 of title 28 consists of only two provisions:
23  §§ 2041 and 2042.

24    Deposit of moneys in pending or adjudicated cases is
25  governed initially by 28 U.S.C. § 2041:

26         All moneys paid into any court of the United States, or
           received by the officers thereof, in any case pending or
27         adjudicated in such court, shall be forthwith deposited with
           the Treasurer of the United States or a designated
28         depositary, in the name and to the credit of such court.

1          This section shall not prevent the delivery of any such
           money to the rightful owners upon security, according to the
2          agreement of parties, under the direction of the court.

3    28 U.S.C. § 2041.

4          The withdrawal provision has two independent aspects

5    embedded in 28 U.S.C. § 2042 - the requirement of court order to

6    withdraw funds and the requirement of custodial escheat:

7          No money deposited under section 2041 of this title shall be
           withdrawn except by order of court.
8
           In every case in which the right to withdraw money deposited
9          in court under section 2041 has been adjudicated or is not
           in dispute and such money has remained so deposited for at
10         least five years unclaimed by the person entitled thereto,
           such court shall cause such money to be deposited in the
11         Treasury in the name and to the credit of the United States.
           Any claimant entitled to any such money may, on petition to
12         the court and upon notice to the United States attorney and
           full proof of the right thereto, obtain an order directing
13         payment to him.

14   28 U.S.C. § 2042.

15         Key terms distilled from these provisions are "rightful

16   owner" and "entitled to" and "full proof of the right thereto."

17         Case law clarifies that proof requires proof of a "present

18   entitlement" to funds. E.g., In re Pena, 600 B.R. 415, 421-22

19   (9th Cir. BAP 2019), aff'd, 974 F.3d 934 (9th Cir. 2020).

20         In the meanwhile, the funds in custodial escheat in the

21   Treasury retain their status as property of the estate because

22   they have not been abandoned and continue within the exclusive

23   jurisdiction of the bankruptcy court. 28 U.S.C. § 1334(e)(1).

24

25                              II

26                       Debtor's Theories

27         The debtor's principal legal theory is that years of

28   inaction by JP Morgan Chase-EMC amounts to withdrawal or

                              6

abandonment of the claim, with the asserted consequence that the
estate has become a so-called "surplus" estate in which the
debtor is entitled to a distribution under § 726(a)(6).

                                    A

     The flaw in the debtor's logic about § 726(a)(6) is that it
assumes away the adjudication inherent in the allowance of the
proof of claim. The allowance and payment of $228,288.47 on the
$671,000 claim, to which there was no objection, operated as an
adjudication, within the meaning of § 2042, that JP Morgan Chase-
EMC is entitled to be paid up to $671,000.

     To be sure, it is possible, even at this late date, to
reconsider and disallow a claim for "cause" according to the
equities of the case. 11 U.S.C. § 502(j); Fed. R. Bankr. P. 3008
& 9024. But no motion has been made and equities are dubious.

     As the Collier treatise authors note, it is not clear
whether a trustee or debtor may seek to have a claim disallowed
and the funds reallocated if a check is unclaimed for a long
period of time or a creditor cannot be located during a case. 3
Collier on Bankruptcy ¶ 347.02 (Richard Levin & Henry J. Sommer,
eds., 16th ed.). What should be clear, however, is that a chapter
7 debtor cannot leapfrog unpaid creditors in the § 726
distribution regime.

     At a minimum, there must be some reason to depart from the
norm established by the statute. Here, none suggests itself. JP
Morgan Chase-EMC has suffered the indignity of demotion to
unsecured status and having to share pro rata with less
privileged creditors, but no question has been raised about the

1   merits of the claim itself. Whatever else "cause" may mean in
2   § 502(j), creditor sloth does not qualify as § 502(j) "cause."

3        Unless the JP Morgan Chase-EMC $671,000 claim is either
4   withdrawn or disallowed, it is impossible for the § 726 waterfall
5   to yield a "surplus" distribution to the debtor per § 726(a)(6).

6        The fact that JP Morgan Chase-EMC may have been reclining on
7   its rights for nearly a decade is mere self-inflicted economic
8   harm not affecting the merits of its claim. It could have been
9   paid $228,288.47 in 2012 dollars, now it stands to be paid
10  $228,288.47 in 2021 dollars.

11

12                                B

13       The debtor argues that the case should not have been
14  reopened in the first instance. The theory is that § 554(c)
15  operated to abandon 424 East Heritage to the debtor and to deem
16  it administered for purposes of § 350 when the bankruptcy case
17  was first closed. 11 U.S.C. § 554(c).

18       However, property of the estate that was not abandoned by
19  operation of § 554(c) included the unscheduled cause of action to
20  avoid the defective secured interest on 424 East Heritage. That
21  cause of action remained property of the estate after closing of
22  the case. 11 U.S.C. § 554(d).

23       Moreover, what led to the case being reopened was the act of
24  the debtor's agent - her bankruptcy counsel - informing the then-
25  former trustee that the deed of trust had not been recorded. If
26  she had done nothing, foreclosure loomed with no value for her.

27       Nobody questioned the reopening at the time. Nobody raised a
28  § 554(c) technical abandonment issue. Nobody formally challenged

                                8

1  either the trustee's authority to administer and sell 424 East

2  Heritage as property of the estate or this court's assertion of

3  jurisdiction over the property. Nobody objected to closing the

4  fully-noticed sale free and clear of liens. Title was transferred

5  to buyers in a market transaction that would be inequitable to

6  upset. The matter is final and beyond cavil.

7

8                                C

9      The debtor also appeals to equity. She says that she should

10  be entitled to the funds because the sale of her property is

11  their source. That does not suffice to overcome the provisions of

12  the Bankruptcy Code.

13      The protection for the debtor was her ability to exempt some

14  of the sale proceeds. As noted, in the reopened case she could

15  have amended her claim of exemptions to exempt $16,400 of the

16  proceeds under the California Code of Civil Procedure

17  § 170.140(b)(5) "in any property" on a no-questions-asked basis.

18  Fed. R. Bankr. P. 1009(a); Goswami v. MTC Distrib. (In re

19  Goswami), 304 B.R. 386, 392-93 (9th Cir. BAP 2003); cf. Martinson

20  v. Michael (In re Michael), 163 F.3d 526, 529 (9th Cir. 1998)

21  (right to amend includes exemptions). She did not do so.

22      In short, there is no dispute about validity of the $671,000

23  claim. There is no dispute that claims required to be paid under

24  § 726(a)(2) were not paid in full. And, there is no basis to

25  argue that the funds were in any way abandoned by the trustee.

26      The debtor cannot help herself to the property of a creditor

27  merely because the creditor has not been paying attention.

28

1                                      III

2                                   Case Law

3        Reported cases regarding unclaimed funds, none of which is

4   on all fours with this case, are consistent with this conclusion.

5        The Ninth Circuit decided an analogous unclaimed funds issue

6   by ruling that rents are assets separate from the underlying

7   properties. Pena, 974 F.3d at 939-40, aff'g 600 B.R. 415, aff'g

8   No. 12-13170-A-7, Dkt. #707 (Bankr. E.D. Cal. Mar. 29, 2018).

9        It ruled in Pena that a debtor does not meet the burden of

10  establishing his entitlement to funds by simply alleging that

11  other parties are not entitled to them. Pena, 974 F.3d at 940.

12       In what the Ninth Circuit's Pena panel described as a

13  "careful, well-reasoned opinion," the BAP's Pena decision

14  detailed how a petitioner for funds must have a "present

15  entitlement" to them and that, as between a debtor and unsecured

16  creditors who have not been paid in full, unpaid creditors have

17  the superior right. Pena, 600 B.R. at 422-24.

18       There cannot be a "surplus" entitled to distribution to the

19  debtor under § 726(a)(6) when unpaid claims remain. Pena, 974

20  F.3d at 940. That is the situation here.

21       Petitioners for unclaimed funds have the burden of proof of

22  present entitlement to receive the funds. E.g., Pena, 600 B.R. at

23  421-22; In re Percolla, 2008 WL 1969584, at *3-4 (Bankr. E.D.

24  Cal. 2008). The debtor has not carried her burden of proof.

25       It has also been held that a chapter 11 debtor cannot

26  capture unclaimed funds when the terms of the confirmed chapter

27  11 plan prohibit equity security holders from receiving a

28  distribution before all higher priority classes are paid. In re

1 | Connor Corp., 2008 WL 2414316, at *2 (Bankr. E.D.N.C. 2008).

2 | That is the situation here; according to the trustee's Final
3 | Account, $459,472.22 was discharged without payment. There could
4 | be no distribution to the debtor under § 726(a)(6) until those
5 | unpaid claims are dealt with.

6 |

7 | IV

8 | Specialized Loan Servicing LLC

9 | Specialized Loan Servicing LLC has presented copies of the
10 | debtor's signed promissory note, the cover page to the
11 | Subservicing Agreement (Non-Agency Securitized Loans) between JP
12 | Morgan Chase Bank, National Association, as Servicer and
13 | Specialized Loan Servicing LLC as Subservicer Effective as of
14 | November 6, 2014, and a Notice of Servicing Transfer addressed to
15 | the debtor dated December 8, 2014.[6]

16 | It also has represented that it would be satisfactory if
17 | this court were to order that payment from the Treasury be made
18 | to the order of JP Morgan Chase-EMC, as stated on the allowed
19 | proof of claim. This provides some assurance that Specialized
20 | Loan Servicing LLC is not an imposter.

21 | Two difficulties, however, fall short of "full proof" within
22 | the meaning of § 2042.

23 | First, the text of the Subservicer Agreement is not
24 | provided. Counsel for Specialized Loan Servicing LLC asserted in

25 |

26 | ────────────────

27 | [6]Why would Specialized Loan Servicing LLC address a "we-are-your-new-loan-servicer" communication to a discharged debtor regarding a debt that is not supported by a lien? See 11 U.S.C.
28 | § 524(a)(2). JP Morgan Chase-EMC and Specialized Loan Servicing LLC might have explaining to do.

1 open court that the text is "privileged" without articulating any
2 basis for privilege.

3      This court doubts that there is an applicable evidentiary
4 privilege independent of a court's plenary ability to protect
5 confidential commercial and financial information from public
6 disclosure. See, e.g., 11 U.S.C. § 107(b)(1); Fed. R. Civ. P.
7 26(c), incorporated by Fed. R. Bankr. P. 7026.

8      Moreover, this court has had the experience of a lawyer for
9 a servicer confidently asserting in open court that a servicing
10 contract authorized "X", then after being forced to produce the
11 contract it turned out to forbid "X". Once bitten, twice shy.

12      "Full proof" for purposes of § 2042 requires producing the
13 full text of the Subservicing Agreement.

14      Second, the trustee's Narrative Supplement to Trustee's
15 Final Account, Dkt. # 61, alludes to his understanding that the
16 mortgagee was reluctant to release its lis pendens and to agree
17 to the sale of 424 East Heritage out of concern that such "would
18 jeopardize insurance claim recovery."

19      If there was an insurance claim recovery on account of a
20 title company's failure to record a deed of trust, then it
21 follows that the insurer may have subrogation rights that affect
22 the requirement of "present entitlement." "Full proof" for
23 purposes of § 2042 requires demonstration that there is not a
24 competing subrogation claim.

25

26                              * * *

27      For the reasons stated in this decision, which contains
28 findings of fact and conclusions of law:

1    The debtor's petition for payment of $228,288.47 from the

2  Treasury will be DENIED with prejudice. The application of

3  Specialized Loan Servicing LLC will be DENIED without prejudice

4  to being renewed upon demonstration of the actual terms of the

5  Subservicing agreement with JP Morgan Chase Bank, N.A. and upon

6  demonstration that no insurer has competing rights.

7    An appropriate separate order will issue.

8

9  Dated: August 11, 2021

10

11

12                              _____
                                United States Bankruptcy Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28